ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7034
    Facsimile: (415) 436-7234
    daniel.kassabian@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 23-00201-YGR |
| Plaintiff, | MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |
| v. | |
| ELBIN SALVADOR ARCHAGA-AYESTAS, | Date: July 27, 2023<br>Time: 10:30 am |
| Defendant. | Ctrm: 4, 3rd Fl<br>Judge: The Honorable Kandis A. Westmore |

## I. SYNOPSIS

On June 29, 2023, the grand jury indicted defendant Elbin Salvador Archaga-Ayestas, who is 19 years-old, for fentanyl distribution on May 11, 2023. That day, Mr. Archaga-Ayestas sold 2 ounces of fentanyl, including an ounce of "clean" fentanyl that was extremely potent, with a substance purity of 32%. Mr. Archaga-Ayestas then sold another four ounces of fentanyl on June 8. And, at the time of his arrest on June 21, Mr. Archaga-Ayestas was caught with approximately <u>2.7 kilograms of fentanyl</u>, in a bucket he was carrying—plus another <u>4 kilograms of fentanyl</u> in his home and car. By way of comparison, just <u>2 milligrams of fentanyl</u> is potentially lethal.[1]

---

[1] U.S. Drug Enforcement Administration (DEA), Facts About Fentanyl (Feb. 23, 2022) *available at* https://www.dea.gov/resources/facts-about-fentanyl.

It should come as no surprise that his GPS cell phone ping location data and location data from a tracker on his car show that Mr. Archaga-Ayestas frequently has been traveling to San Francisco's Tenderloin neighborhood during that same time. This raises a strong inference that he's distributing this deadly drug at the epicenter of the fentanyl epidemic—in a city where 324 people have already died from fentanyl overdoses this year alone.[2] Thus, Mr. Archaga-Ayestas poses an extreme danger to the community.

Mr. Archaga-Ayestas is a risk of non-appearance. Pretrial Services recommends detention on this basis. He is an undocumented alien (a Honduran citizen) with no ties to this community, and who has impersonated his brother while in the United States. Mr. Archaga-Ayestas has nowhere to stay locally either. The two potential sureties he has put forward to the Court have insufficient ties to the community. They provide insufficient information to assure the Court that they can fulfill the solemn obligations that the Court would place upon them.

In light of the above, the government now moves for pretrial detention. Mr. Archaga-Ayestas cannot overcome the presumption in this case that no condition, or combination of conditions, exists that will reasonably assure his appearance in court, and the community's safety.

## II.     LEGAL STANDARDS

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id*. A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants or denials of bail, not tethered to an individualized determination, are impermissible.

---

[2]  Luke N. Rodda, Ph.D, Report on Accidental Overdose Deaths, dated July 14, 2023, available at https://sf.gov/sites/default/files/2023-07/2023%2007_OCME%20Overdose%20Report.pdf.

*Id*. Consideration of factors outside those articulated in section 3142 is also disfavored. *Id*.

When the defendant is an undocumented alien, facts in connection with that status can be considered by a court in evaluating flight risk, even though the fact of the defendant's involuntary deportation may not. *See generally*, *United States v. Santos-Flores*, 794 F.3d 1088, 1092-93 (9th Cir. 2015). Thus, a court may consider a defendant's "multiple unlawful entries into the United States, . . . , his use and possession of fraudulent identity documents, and the severity of the potential punishment and the weight of the evidence against him." *Id*. at 1092. Considering these factors does not "create a categorical rule that would prevent release for undocumented defendants . . . ." *Id*.

Where there is probable cause that a defendant has violated the Controlled Substances Act and faces a maximum of 10 years in prison or more, there is a rebuttable presumption that no condition or combination of conditions reasonably will assure both the defendant's appearance as required, and the safety of the community. *See* 18 U.S.C. § 3142(e)(3)(A). The initial burden of production to overcome the presumption is on the defendant. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). While the presumption is rebuttable, it is not a "bursting bubble." *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.) *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990). The presumption is not so weak that, if a defendant introduces evidence, "the presumption 'bursts' and totally disappears, allowing the judge (or jury) to decide the question without reference to the presumption." *Id*. (stating that "a 'bursting bubble' approach might render the presumption virtually meaningless" because a defendant can "always provide the magistrate with some reason"). Thus, the presumption is never erased; instead, it remains as an evidentiary finding militating against release that is to be weighted along with other relevant factors. *U.S. v. King*, 849 F.2d 485 (11th Cir. 1988); *United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (citing *Jessup*, 757 F.2d at 389).

If the defendant has rebutted the presumption, the court must then consider four factors to determine whether to detain pretrial: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at

court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community by the defendant's release.  18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## II.     OFFENSE CONDUCT

The indictment's charge results from a controlled buy-walk purchase of fentanyl by DEA undercover (UC) officer on May 11, 2023.  But there is a lot of other related offense conduct that shows he is a danger to the community.

### A.     The Defendant Sells Fentanyl On May 11, 2023

As set forth in the Criminal Complaint [ECF 1], Mr. Archaga-Ayestas negotiated the sale of fentanyl via texts and phones call with the UC from May 8 through 11, 2023.  And then Mr. Archaga-Ayestas sold 2 ounces of fentanyl to the UC on May 11 in Oakland at De Fremery Park for $800—one ounce of which Mr. Archaga-Ayestas referred to "clean clean," which meant fentanyl of high purity.  Testing by the DEA laboratory confirmed that one of the two ounces was 28.1 grams of 32% pure fentanyl, while the other was 27.8 grams of only 5% purity.

### B.     The Defendant Sells Fentanyl On June 8, 2023

Also as set forth in the Criminal Complaint, Mr. Archaga-Ayestas and the UC texted on June 7 through 8 and negotiated the UC's purchase another 4 ounces of "non-clean" fentanyl for $800.  Then, Mr. Archaga-Ayestas sold the 4 ounces of suspected fentanyl to the UC in 4 baggies on June 8, again at De Fremery Park.  (Lab results are pending.)

### C.     The Defendant Travels To The Tenderloin Neighborhood In San Francisco

Also as set forth in the Criminal Complaint, on May 15, 2023, the Court authorized search warrant no. 3-23-mj-70685 for the disclosure of physical location data for Mr. Archaga-Ayestas's telephone, with which he had called the UC.  On June 5, 2023, the Court authorized search warrant no. 3-23-mj-70819 for the use of vehicle GPS tracking device on Mr. Archaga-Ayestas's car, which he used to meet the UC for the above-noted buys.  Thus, from about May 16, 2023 to his arrest on June 26, 2023, agents obtained GPS cell phone ping location data pertaining to Mr. Archaga-Ayestas's telephone.  And from June 7, 2023 to his arrest, agents obtained GPS vehicle location data pertaining to Mr. Archaga-Ayestas's car.  Agents have observed both cell phone location data and vehicle location data

put their possessor, i.e. Mr. Archaga-Ayestas, repeatedly in the Tenderloin Neighborhood of San Francisco during the time frames those data points were collected.

The Tenderloin Neighborhood is a common location for drug traffickers to meet and supply dealers and customers with drugs. Thus, in view of the these facts, there is a strong inference that Mr. Archaga-Ayestas—who has no legitimate employment, let alone employment in that neighborhood—frequently traveled to the Tenderloin Neighborhood in San Francisco for drug trafficking.

### D. June 26, 2023 Bust And Seizure Of Fentanyl

On June 26, 2023, Mr. Archaga-Ayestas was arrested pursuant to the Criminal Complaint in this case, and his home and vehicle searched pursuant to search warrant no. 23-mj-70882. This occurred following an attempt by the UC to buy fentanyl. While Mr. Archaga-Ayestas did leave his apartment to meet the UC, he returned instead of meeting as planned, and was arrested in front of his apartment that day. When arrested, Mr. Archaga-Ayestas was carrying a white bucket with approximately 2.7 kilograms (5.9 lbs) of fentanyl in multiple baggies per this photo:



The following was seized from Mr. Archaga-Ayestas's apartment and car (lab results pending):

Living Room
- Approx. 805.7 (1¾ lbs.) grams of suspected fentanyl;
- A bag with fentanyl pill processing equipment – i.e., a kilogram press machine, coloring dyes, a blender, and a hair dryer;

Kitchen
- Approx. 1,134.8 grams (2½ lbs.) of suspected fentanyl;
- Approx. 38.5 grams of suspected base cocaine;

Bedroom 1
- Approx. 1,962.2 grams (4⅓ lbs.) of fentanyl;
- Approx. 10 dosage units of M30 fentanyl pills;
- Approx. 30 Xanax pills;

Car
- Approx. 98.6 grams of suspected fentanyl;
- Numerous M-30 suspected fentanyl pills – approx. 60.4 grams;

Also, $32,522 in cash was seized from Mr. Archaga-Ayestas's home and car.

### III.  THE DEFENDANT'S UNRELIABLE SURETIES

Mr. Archaga-Ayestas has proffered two possible sureties, neither of which has been found suitable by Pretrial Services given their lack of ties to the community, among other issues.

#### A.  The Defendant's Brother

Mr. Archaga-Ayestas has been impersonating his brother while living here—he has used his brother's name to obtain a phone and purchase a car; this resulted in the Criminal Complaint naming his brother instead of him.  Despite this, this impersonated brother is willing to be a surety, and have Mr. Archaga-Ayestas live with him in Houston, Texas.  But Mr. Archaga-Ayestas's brother is not a suitable candidate.  His brother also is undocumented, has not been forthcoming about his employer, and appears to make insufficient income to support Mr. Archaga-Ayestas and assure travel between this Court and Houston.

Accordingly, Pretrial Services determined on July 24, 2023, that Mr. Archaga-Ayestas's brother is not an appropriate bail resource, per its Pre-Bail Report [ECF 15].

#### B.  The Defendant's Newfound Friend

Apparently given Pretrial Services' recommendation on July 24, Mr. Archaga-Ayestas found a friend, who he has known for only 3 months, to be an unbonded surety.  It does not appear that this friend is willing or able to house Mr. Archaga-Ayestas or financially support him, per the Amended Pre--Bail Report [ECF 17] dated July 27, 2023.  This friend has only lived in the community for 3 years herself, and thus lacks significant ties to this community.  Thus, this friend appears to provide no more assurance of Mr. Archaga-Ayestas compliance with bond conditions than his undocumented brother.

### IV.  THE DEFENDANT IS SUBJECT TO A REBUTTABLE PRESUMPTION AND THE SECTION 3142(G) FACTORS WEIGH IN FAVOR OF DETENTION

Mr. Archaga-Ayestas is charged with violating 21 U.S.C. § 841(a)(1) and (b)(1)(B)(vi) (distribution of fentanyl), which carries a penalty of a minimum imprisonment of 5 years and a maximum imprisonment of 40 years.  Accordingly, he faces Controlled Substance Act charges with maximum penalties that are 10 or more years.  A grand jury indictment, as Velasquez faces here, is sufficient to establish probable cause for the purposes of invoking section 3142(e)'s rebuttable

presumption. *See, e.g., Ward*, 63 F. Supp. 2d at 1209. Thus, Mr. Archaga-Ayestas is subject to a rebuttable presumption in favor of detention; he bears the burden of proving that he is neither a flight risk nor that his release will endanger the community. *See* 18 U.S.C. § 3142(e)(3)(A).

Mr. Archaga-Ayestas cannot meet his burden. The information obtained from Pretrial Services provide no basis to rebut the presumption as to either issue. The only "mitigator" noted by Pretrial Services is that he has no history of violence, which is irrelevant to his present risk of his fentanyl dealing. Under section 3142(g)(3) and (g)(4), Mr. Archaga-Ayestas is a danger to the community that favors detention given the amount of fentanyl he has had and its purity. Of note, even were he to ever put forth a stable residence—which he has not yet—home detention will not stop him from assisting others given that a pill pressing process was found in his home. There is clear and convincing proof that no conditions of release will stop this prolific dealer of fentanyl, from returning to the drug trade in some capacity if released—and he has no gainful employment as an alternative.

Mr. Archaga-Ayestas also has no ties to the community. As significant, evidence of Mr. Archaga-Ayestas's guilt and likely lengthy period of federal imprisonment—he now faces a mandatory minimum with no prospect of diversion like his state court case—"makes it more likely that he will flee. . . ." *United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) (affirming district court finding government met burden of showing flight risk and danger to the community in motion for pretrial detention pending re-trial where defendant faced lengthy period of incarceration). The preponderance of evidence shows he is a flight risk and should be detained for that reason too.

## V.   CONCLUSION

For the foregoing reasons, the Court should detain Mr. Archaga-Ayestas pending trial.

DATED: July 26, 2023                                      Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

　　　　　　　　　　　*/s/*
DANIEL N. KASSABIAN
Assistant United States Attorney

2093-6273-7664, v. 1